## DOMINGO v. GETMAN et al.

When a party has given a promissory note, and the payee assigns the note, without recourse, after maturity, and suit is brought upon the note by the assignee, the maker then files his bill against the assignor and assignee, alleging fraud in obtaining the note, and praying for an injunction, and that the note be cancelled: *Held*, that the case was a proper one for equitable relief, and the maker had the right to have the note cancelled, so as to prevent future litigation.

If a party be improperly joined as defendant, the Court or jury, upon application, should first pass upon his case, and, after he is discharged, he could then be examined as a witness for the other defendant.

APPEAL from the District Court of the First Judicial District, County of Los Angeles.

The facts necessary to understand the points decided, appear in the opinion of the Court.

*Sloan & Hartmann* for Appellants.

Appellants in the Court below, after the filing of the bill, and before the answer, filed their motion to dismiss the bill.

1. For want of equity.

2. Because the matters set forth constituted a good defence in the suit at law, for the recovery of the note.

This motion was overruled by the Court, and the appellants excepted.

It is insisted in this case, that a Court of Equity had no jurisdiction, and that, therefore, the bill should have been dismissed, and the injunction dissolved, either upon the hearing of the motion, or upon the trial. It is a familiar principle that chancery will not sustain a suit where there is adequate remedy at law.

This is well defined in the case of Thorn *v.* Williams, 1 Car. L. R., 362.

It will be observed that in the bill, in the case at bar, not a single reason is given, or averment is made, why a Court of Law should be divested of jurisdiction, and why the matter should be heard in equity. No allegation is made that the complaint is remediless at law, or that the interference of a Court of Equity is necessary to prevent a wrong; or that a discovery is necessary from appellants, of anything that is essential to the complainant, to aid him in his defence at law. In fact, the bill is wanting in anything that would give chancery jurisdiction in the case.

In this State the reason no longer exists why bills of this kind may be brought on the ground of discovery alone. The statute permitting one party to call his adversary as a witness, in a trial at law, would be sufficient to do away with the necessity of such proceedings, even *if bills of discovery were not abolished by* the express terms of the statute itself.

The case of Mitchell *v.* Oakley, 7 Paige's Ch. R., 68, was on appeal from the decision of the Vice-Chancellor, dissolving an injunction upon the facts appearing upon the complainant's bill. It stated that the complainant made a note, payable to the order of J. M. Underhill, and entrusted it to the latter for the purpose of having it discounted at a bank, for complainant's benefit. But instead of doing this, Underhill sold it to the defendant as his own, at such a discount as, under the laws of New York, amounted to usury.

The Chancellor, in delivering his opinion, says:

"In cases of concurrent jurisdiction, when the complainant has a perfect defence in a Court of Law, if he chooses to avail himself of it, this Court will not grant a preliminary injunction in the first instance for the mere purpose of obtaining the exclu-

Domingo *v.* Getman.

sive jurisdiction of the case, and thus depriving the adverse party of his common law right of trial by jury. * * * * * But when he asks the interposition of the extraordinary power of this Court, by means of preliminary injunction, to deprive his adversary of the right of a common law trial, as to the matter of fact in dispute between them, he must show by his bill that some injustice would be done him; or that he would be deprived of some legal or equitable right if his adversary should be permitted to proceed at law."

The order appealed from was affirmed.

The case of Perrine et al. *v.* Sticker, 7 Paige Ch. R., 598, came before the Court on a demurrer to complainant's bill. The object of the bill was to obtain a perpetual injunction against the prosecution of a suit at law upon a usurious note, by one of the complainants as principal, and by the other as his surety to the defendant, upon a loan of money. The complainants alleged that the defendant had brought a suit at law upon the note, and that they were unable to prove the usury on the trial in the suit, as the facts were known only to themselves and the defendant. The demurrer was both as to the discovery and the relief sought by the bill. And the defendant alleged, among other causes of demurrer, that the plaintiffs had a perfect and adequate remedy at law, as the defendant to the bill might be examined by the complainants as a witness in the action at law, on the note, under the provisions of the act of May, one thousand eight hundred and thirty-seven, to prevent usury.

The following authorities also support the position here assumed: Melick *v.* Drake, 6 Paige, 470; Williams *v.* Patterson, 2 Overton, 229; Cunningham *v.* Caldwell, Hardin, 123; Price *v.* Nesbit, 1 Hill Ch., 445.

3. The Court erred in refusing to permit the defendant Getman to be sworn as a witness for his co-defendant Rhodes.

In the trial of the cause below, the case of Gates et al. *v.* Walsh et al., decided at the April T., 1856, of this Court, was relied upon as supporting the ruling of the Court. That was an action at law. The rule has always been different in equity.

It is true that the first subdivision of section 392 of the Practice Act, prohibits in general terms a party to an action or proceeding from being a witness. But the statute certainly means when a person is properly a party. Were the rule different, a plaintiff would at all times have it in his power to defeat the ends of justice, and prevent the defendant from adducing any proof by witnesses by making all the witnesses of the defendant parties to the suit.

In 2 Vesey and Bea., 401, the rule is laid down as follows: "In chancery, a co-defendant may be examined for another if not interested in the matter as to which he is to be examined."

In Sproule *v.* Samuel, 4 Scam., 135, it was decided that the

mere fact that one is made a defendant in a bill in chancery, does not necessarily render him an incompetent witness as to matters in which he has no interest.

The same rule is also laid down in Williams *v.* Maitland, Ired. Ch., 92; Douglass *v.* Holbert, 7 J. J. Marsh., 1.

In Tomlinson *v.* Spencer, 5 Cal., 39, this Court decided that the endorser of a promissory note was a competent witness.

It is difficult to see upon what principle, either of law or equity, the Court below was justifiable in excluding the testimony offered.

*J. R. Scott* for Respondent.

The first two errors assigned by appellants will be considered together. It is contended that the Court below erred in refusing the motion of appellants to dismiss the bill, for the want of jurisdiction, and in granting the injunction against Rhodes.

The motion was a joint-motion of Rhodes and Getman, and the appeal is a joint-appeal. Admitting, for a moment, that the defendant Rhodes has some color for such a motion, how can it be contended that his co-defendant, Getman, was entitled to its benefit?

But there was no foundation for the motion. The bill was for the cancellation of a note obtained by fraud, and was in the nature of a bill *quia timet*.

Surely, the cancellation of instruments, obtained by fraud, is a matter of equity jurisdiction. But it is contended, that all the matters set up in the bill, would have been pleaded against a recovery at law, upon the note sued on by Rhodes. To this it is answered:

1. That Getman was not a party to the suit at law.

2. That he was an essential party, as to the perpetration of the fraud.

3. That the facts of his special agency, and his influence over complainant, an ignorant and illiterate man, their long dealings, and the opportunity thereby afforded of committing the fraud, were essentially matters of equity jurisdiction.

4. That Rhodes was a necessary party, as a purchaser with notice, or after maturity, or without a valuable consideration, for the purpose of making the remedy sought complete and perfect.

It is further contended that the bill contains no averment that the complainant is remediless at law, or that the interference of a Court of Equity is necessary to prevent a wrong.

Now what was the remedy of complainant at law? This ability to show the fraud, depended upon a lengthened detail of all the circumstances attending the agency of Getman, who was not a party to the suit—nay, Rhodes had it in his power by taking a nonsuit, to have kept the note *in terrorem* over him for

years, and to have assigned it to third parties, who might have harassed him with suits in remote counties.

It is unnecessary to cite the elementary authorities to sustain the proposition that the jurisdiction of a Court of Equity attaches in all cases where a cloud hangs over a title, or a party because he fears *quia timet*, that he may be injured. All the cases cited by appellants go to establish this doctrine alone : that where a party has a complete, perfect, and adequate remedy at law, that these Courts of Equity will not interfere.

No one disputes that doctrine, and the cases cited contain no other principle.

But had complainant a full, complete, and adequate remedy at law? Then Getman was not a party. True, the defendant Rhodes would have dismissed his suit, and thus defeated a judgment on the merits, and there the note would not have been canceled. The appellants mistake the object of the bill. The injunction was not the relief sought, the cancellation of the fraudulent note was the relief demanded, and the injunction was merely auxiliary.

But this is a joint-appeal, and admit that there was error in granting an injunction against Rhodes, yet that error does not affect Getman—hence, there is no joint-error which can be reversed on the joint-appeal.

2. The third point made by appellants is, that the Court erred in not permitting Getman to be sworn as a witness for his co-defendant, Rhodes.

Though the appellants admit, that the Practice Act forbids that Getman, a party defendant, should be sworn, yet it is deliberately contended that the Practice Act does not bind in a case of equity jurisdiction.

The counsel for respondent has always supposed that the statute of the State had never recognized one rule of law practice and one of equity practice, but that when it was forbidden, for instance, that an Indian, or negro, or a party to a suit, should not in certain cases, be a competent witness, the inhibition applied equally to the District Court, whether sitting as a Court of law or of equity.

But the appellants contend, and cite authorities to prove, that in other States a distinction is observed between law and equity ; but it is confidently submitted that there was no statute in the States where these decisions were made declaring the absolute incompetency of a party, as in this State; and hence the authorities have no direct bearing.

But it is contended that Getman was not properly a party, that he was only made so for the purpose of preventing him from being a witness. To have brought the suit against Rhodes alone would have left the remedy incomplete and inadequate,

and equity will not tolerate litigation by piecemeal.    5 Cal., p. 116.

The truth of the whole matter is apparent on the face of the transaction.    The complainant simply appealed to a Court of Equity to protect him from a most flagrant wrong, and made the agents connected therewith parties defendant.

BURNETT, J., delivered the opinion of the Court—FIELD, J., concurring.

On the tenth of February, 1854, plaintiff executed his note to Getman, due six months after date.    On the twentieth of March, 1855, Getman assigned the note, without recourse, to Rhodes, who brought suit on the note in the District Court.    Plaintiff then filed his bill in the same Court against the defendants, alleging fraud in obtaining the note, and praying for an injunction, and that the note be canceled.    The plaintiff had a decree, and the defendants appealed.

The first point made by the defendants is, that the Court should have dismissed the bill upon defendants' motion, for the reason that the plaintiff had a complete remedy at law, and should have set it up in defence to the action upon the note.

It is clear that if the remedy of Domingo was complete at law, he had no right to take the case from a jury and bring it before the Chancellor.    But was his remedy as complete at law as in equity?

The note was payable to Getman or order, and was assigned by him to Rhodes, after due.    It was, therefore, liable to the same defence in the hands of any other party as it was in the hands of Getman.    But had the fraud been set up at law, Rhodes could have at once discontinued his suit and kept the note hanging over the maker for years.    It might have been assigned to another party, residing in another portion of the State, who could have harassed the maker by a suit commenced in the county where the assignee resided.    The case was a proper one for equitable relief.    If the facts stated in the bill were true, the maker had the right to have the note canceled, so as to prevent all future litigation.

The cases of Mitchell v. Oakley, and of Perrine v. Sticker, 7 Paige, 65 and 598, are not in point for defendants.    The last case is an authority to support the view we have taken.    The note in the case of Perrine v. Sticker was not negotiable, and the suit must always have been in the name of the payee; and, for that reason, he must have always been before the Court as the plaintiff of record, and liable to be examined as a witness.

The second objection made by the defendants is, that the Court erred in refusing to permit Getman to be sworn as a witness for his co-defendant, Rhodes.    This objection is not well taken.    The point was decided by this Court in the case of Lu-

cas, Turner & Co. *v.* Payne & Dewey, (7 Cal. Reports, 92.)   If a party be improperly joined as a defendant, the Court or jury, upon application, should first pass upon his case; and, after he is discharged, he could then be examined as a witness for the other defendant.

The third and last objection made by the defendants is, that the decree of the Chancellor was not sustained by the evidence. The testimony was very conflicting, and there was either gross fraud or mistake somewhere.   We think the testimony ample to sustain the finding and decree of the Court below.

The judgment is therefore affirmed.