## Noe *vs.* Gibson.

Where property is rightfully in the hands of a receiver it is in the custody of the court, and cannot be distrained upon for rent without permission of the court by whom the receiver was appointed; and any person who takes the property out of the possession of the receiver, without such permission, after he has notice of the character in which such possession is holden, is guilty of a contempt.

If the landlord has a claim upon the property, in the hands of a receiver, for the recovery of rent for which such property is holden, the proper course for him is to apply to the court for an order that the receiver pay the rent, or that the landlord be at liberty to proceed by distress, or otherwise, as he may be advised. And if the landlord's claim is contested the court will give him leave to go before a master and be examined *pro interesse suo.*

The same principles are applicable to any other interference with the possession of a receiver, sequestrator, committee, or custodee, who holds the property as the officer of the court of chancery; as his possession is in law the possession of the court itself.

THIS was an appeal by C. Deuroche, the receiver ap-   April 16.
pointed in this cause, from a decision of the vice chancellor
of the first circuit denying an application for an attachment
against the defendant and two other persons for a contempt.
The relator was appointed receiver of the property and ef-
fects of the defendant Gibson, who duly assigned the same
to him under an order of the court, on the thirty-first of
December, 1838. And the alleged contempt was for for-
cibly dispossessing the receiver of a vessel, a part of the as-
signed property, without authority or permission of the
court, under the following circumstances: The sloop at
the time of the assignment was lying at Eaton's Island in.
the county of Queens, about twelve miles from New-York;
upon which island the defendant resided, he having rented
the same of the respondent Eaton for one year from the
first of April, 1838. On the second of January, 1839, the
receiver went to the island and took the vessel into his cus-
tody or possession, and left his workmen there employed in
shipping the rudder and making some other slight repairs
which were necessary to enable them to bring the vessel to
New-York. Subsequently, on the same day, Eaton issued

a distress warrant, for three quarters rent alleged to be due to him from the defendant, and sent the other respondent Hyatt, a constable of Queens county, to distrain upon the vessel. He distrained accordingly, but made no attempt to remove the vessel; and the receiver afterwards caused the vessel to be removed to New-York, and left it in charge of a keeper employed by him for that purpose. Some two or three days afterwards the respondents came to where the vessel was, at New-York, and took it out of the possession of the keeper and carried it off.

*J. Greenwood*, for the appellant. The receiver's possession is the possession of the court, and this court will not permit any interference with the same by other persons. He is considered an officer of the court, and therefore, when in possession, an ejectment cannot be brought without leave of the court. (9 *Ves.* 336.) This court will restrain third persons not parties; and if a third person claims adversely he must apply here for leave to try, &c. (5 *Paige*, 131.)

*S. Stevens*, for the respondent. The sloop was seized by the distress warrant before she was taken possession of by the receiver. If not, no contempt has been committed; as the landlord and officer, when the distress warrant was served, had no knowledge that the receiver had taken possession of the vessel. A receiver cannot have greater power than the commissioners of bankruptcy in England. There is no statute which exempts property from distress while on the demised premises, although it may have passed by assignment to a receiver. Such an assignment would not have any greater force or effect than an act of bankruptcy. And a seisure of property by the commissioners of bankruptcy does not deprive the landlord of the right of distress. (*Cullen's B. L.* 123, 4. *Cooke's B. L.* 213, 221.)

THE CHANCELLOR. The vice chancellor has clearly mistaken the law and practice of this court if he supposed the respondents were justified in taking this vessel out of the custody of the receiver, upon a distress warrant for rent,

without the permission of the court first obtained for that purpose. It is evident from the affidavits that before there was any attempt to levy upon the vessel, for the alleged arrears of rent, the property was legally as well as actually in the custody of the court, through its officer. Any attempt therefore to take the property out of the custody of the receiver, or of the persons employed by him to take care of it, was a contempt of court. The landlord and his bailiff may have mistaken their legal rights; and if so that may be sufficient to protect them from punishment for a wilful contempt. But it forms no ground for excusing them from restoring the vessel, which they have improperly rescued from the custody of the law in which it had been placed by the order of the court. So far as the defendant was himself concerned there is no excuse whatever for this interference, on his part, to deprive the receiver of the possession of the property. And if, as there is much reason to suspect, the landlord has been induced to distrain upon the property at his instigation, he ought to be punished by imprisonment for this most unjustifiable attempt to pervert the course of justice; in addition to a fine sufficient in amount to pay the costs and expenses of the proceedings and to make good the injury sustained by his wilful contempt.

It is well settled that after a receiver has been appointed and has taken the rightful possession of the property, it is a contempt of court for a third person to attempt to deprive him of that possession by force, or even by a suit or other proceeding against him, without the permission of the court by whom the receiver was appointed. (*Angel* v. *Smith*, 9 *Ves. Rep.* 335.) Where the receiver is in possession of property upon which a third person has a claim for rent, the proper course for the landlord is to apply to the court, upon notice to the receiver, for an order that the receiver pay the rent or that the landlord be at liberty to proceed by distress or otherwise as he may be advised. (*Smith's Off. of Rec.* 77.) And if the claim is contested the court will permit the claimant to go before the master and be examined *pro interesse suo*. The same principles are applicable to every other interference with the possession of a receiver, sequestrator, committee, or custodee, who holds the property as

1839.

Noe
v.
Gibson.

the officer of this court; as his possession is in law the possession of the court itself. (*Johnes* v. *Claughton, Jacob's Ch. Rep.* 572. *Lees* v. *Waring*, 1 *Hogan's Rep.* 216. *Crone* v. *O'Dell*, 2 *Id.* 144. *Sweet* v. *Austin, Conroy's Rep.* 174. *Lynch* v. *Blake, Id.* 201. *Kaye* v. *Cunningham*, 5 *Mad. Rep.* 406. *Matter of Heller*, 3 *Paige's Rep.* 199. *Matter of Hopper*, 5 *Id.* 489.) The landlord and his bailiff in the present case, therefore, instead of attempting to take the vessel out of the custody of the receiver or of his agents, should have applied to the court for an order directing the receiver to pay the rent out of the proceeds of the vessel; as was done in the case of *Dixon* v. *Smith*, (1 *Swans.* 457.) And if the landlord's claim upon the vessel for the arrear of rent was disputed, the court would have given him leave to go before the master and be examined *pro interesse suo*; to the end that upon the coming in of the master's report such an order might be made in the case as justice required. (1 *Daniels Ch. Pract.* 644. 2 *Story's Eq.* 177.) It is not too late to make such an application now. But that is no ground for refusing an attachment against the respondents, as it appears that the vessel was worth several hundred dollars, while the rent claimed was less than eighty. In any event therefore the receiver is entitled to have the vessel restored to him, of which he had been dispossessed by an act of these parties which was a contempt of the court. The order appealed from must therefore be reversed, without costs, however, as this appears to be a new question in this court. And an attachment must issue against the respondents, in which they are to be holden to bail in the sum of $250 each, unless they shall within twenty days after service of this order, and of a copy of the taxed bill on them or their solicitors, restore the vessel to the receiver and pay to him the taxable costs of the application to the vice chancellor. The proceedings are to be remitted to the vice chancellor; and the attachment is to be issued, returnable before him, upon filing an affidavit of the receiver showing the default of the defendants in returning the vessel and paying the costs.