In the Matter of THE WOVEN TAPE SKIRT COMPANY.

*Receiver of a patent right — what constitutes an interference with his possession — Contempt of court — what court has jurisdiction.*

The appellant and one Cohn were each the assignee of one-sixth of a patent for the manufacture of woven-tape skirts, panniers and bustles, and had an agreement with the owners of the residue by which, for a certain royalty, they had the exclusive right of manufacturing such articles thereunder.   Subsequently the rights so secured by them were transferred to a corporation created for the purpose of carrying on business under the said patent, which corporation was subsequently dissolved and said rights vested in a receiver, who was authorized by an order of the court to continue and carry on the business of the corporation.

The appellant, the former presiding officer of the corporation, thereafter engaged in a similar business, which he carried on in an adjoining store, and continued to manufacture the patented articles, having procured from the patentees their license and consent to his so doing.   *Held*, that as the exclusive right to manufacture the patented articles was vested in the receiver, the acts of the appellant were such an interference with his possession of such rights as constituted a contempt of the court, and that appellant was properly adjudged guilty thereof and punished therefor.

An action for the infringement of a patent must be brought in the United States Court; but proceedings to punish an interference with the title and possession of a patent right vested in a receiver, may be instituted in the State court appointing him.

APPEAL by Joseph J. West from an order adjudging him in contempt, for interfering with the rights of a receiver appointed on the dissolution of a manufacturing corporation.

*D. T. Walden,* for the appellant. To make a person guilty of contempt of court, in such case, there must be an actual interference with or disturbance of the possession of the receiver. (High on Receiver, § 171; *Albany City Bk.* v. *Schermerhorn,* 9 Paige, 372; *Same* v. *Same,* 10 id., 263.) There is no case in which a party has been held in contempt for merely claiming a right of property in that of which the receiver has possession, or the title to it, unless there has been an actual interference with or disturbance of the possession of the receiver. (High on Receivers, § 172.) Even if it be conceded that Mr. West made and sold articles which were covered by the letters patent, and the right to sell which was vested in the receiver under the assignment of the two-sixths interest and the agreement, it is submitted that such act is in no way a disturbance of or interference with the possession of the receiver. The violation of privileges secured by letters patent is the violation of a right which is entirely distinct from possession. Mr. West may not have had authority to make the articles, but that involved the question of right and authority as between him and the patentees or owners of the letters patent. The determination of the rights of parties under letters patent belongs exclusively to the federal courts, and this court has not jurisdiction to restrain the infringement of a patent-right. (*Dudley* v. *Mayhew,* 3 N. Y., 14; *Hovey* v. *Rubber Tip Pencil Co.,* 57 id., 119.) The jurisdiction of the United States courts is exclusive in all cases arising under the patent-right or copyright laws of the United States. (U. S. Rev. Stat., § 711, subd. 5.) The right of the receiver, if any, arises under the patent laws of the United States, and must be pursued in those courts.

*Albert Cardozo,* for the respondent.

DANIELS, J.:

The corporation of whose assets the receiver was appointed was engaged in the business of manufacturing woven tape skirts, panniers and bustles, after the plan described in letters patent issued to

Doughty and Draper.   The appellant and Moritz Cohn were each the assignee of one-sixth of the patent, and they had an agreement with the owners of the residue by which, for a certain royalty, they secured the exclusive right to manufacture such articles under the patent during the period for which it had been extended.   The rights so secured by them they assigned and transferred to the corporation, and they continued to be owned by it to the period of its dissolution and the appointment of the receiver.   At that time they were vested in him by virtue of an order made by this court, and he was permitted to continue and carry on the business of the corporation.

The appellant had been the presiding officer of the company, and upon its dissolution engaged in a similar business, which he has since carried on in an adjoining store.   In the course and management of that business he has continued the manufacture of articles, the exclusive right to make and sell which was secured by this patent.   For the purpose of doing that, he procured the license and consent of the patentees and paid them the same royalty as had been mentioned in the agreement transferred to the company and its receiver.   For that he was proceeded against, at the receiver's instance, and was adjudged liable to punishment for contempt.

It is entirely clear that the exclusive right to manufacture the articles patented vested in the receiver.   It was one of the assets of the company, to which, upon his appointment, he succeeded, and, with the other assets, was delivered over to him as far as such a subject-matter was capable of delivery.   That vested him with the possession as completely as he could succeed to the possession of rents, debts and choses in action.   If it had been property of the latter description, and the president of the company had interfered and collected them, after their transfer to a receiver, no doubt could be entertained that it would be such an interference with his possession as would constitute a contempt of the authority of the court. The right secured under the patent was of a similar nature.   It was that of manufacturing articles after the system devised and secured by it.   That belonged exclusively to the receiver after his appointment, and he alone was authorized to manufacture articles according to its device, and to the emoluments and profits to be derived from that source.   By doing the same thing, as the appellant clearly

did, he appropriated a portion of the identical privilege which had become vested in the receiver, and, to that extent, interfered with his possession. The patentees could confer no such right upon him, for by their agreement they had entirely parted with it, as long as the business was carried on and the royalty stipulated for was paid to them, and no suggestion has been made that the agreement with them did not continue to be faithfully performed in both respects. The cases relied upon in support of the appeal taken from the order were clearly distinguishable from the present one; for the proceedings therein held not to amount to a contempt of the court's authority, embodied in the receiver's appointment, were taken to affect other and different interests in the same property, and in no way disturbed or restricted the rights or possession of the receiver. (*Albany City Bk.* v. *Schermerhorn,* 9 Paige, 373; S. C., 10 id., 263.) Where that has not been the fact, such an interference with the subject of the receivership as impaired and disturbed the receiver's control over it, and deprived him of its income, profits and emoluments, has usually been considered and held to involve a contempt of the authority of the court, and to be punishable as such. (*Noe* v. *Gibson,* 7 Paige, 513; High on Receivers, §§ 163–166; Kerr on Receivers [2d Am. ed.], 177–180.) And the evidence taken in support of the application to punish the appellant, established such an interference with the authority of the receiver in this case. To the extent that he made use of the privilege secured by the patent, he deprived the receiver of it. He so far supplanted him in his possession; and if he could do that, and still successfully shield himself against restraint and punishment, he might, upon the same principle, wholly deprive the receiver of the benefits of his right to make use of the invention. That was vested in him for the advantage of those entitled to share in the distribution of the corporate assets; and it is the duty of the court to protect and maintain him in its preservation until it shall be finally disposed of under its authority, and that can only be effectually done by proceedings of the nature of those taken against the appellant. An action for an infringement of the patent must, of course, be prosecuted only in the federal courts; but the proceeding resulting in the order appealed from was in no sense of that nature. Its object was not to prevent or redress an infringement, but to punish

an interference with the title and possession of the receiver. That was wholly and exclusively vested in him by virtue of the orders of the court; and, in part, it was usurped and resumed by the act of the appellant. He did not infringe upon the right secured by the patent, but excluded the receiver from its exclusive possession and enjoyment; and when that may be shown to be the case, the court may summarily interfere and redress the wrong, even though the subject interfered with may be a patent created by the authority of the United States. The controversy relates to the title and possession of the patent itself, and not to its validity or invalidity as an invention. It is so much property transferred to the custody and safe-keeping of the officers of the court, and the power invoked simply protects him in its possession; and there is nothing in the provision or policy of the laws of the United States which, in any degree, abridges the powers of the State courts in that respect.

The order in this case was right, and it should be affirmed, with ten dollars costs and the disbursements made upon the appeal.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., DANIELS and BRADY, JJ.

Order affirmed, with ten dollars costs and disbursements.