IN THE MATTER OF THE PETITION OF CONRAD LOOS AND OTHERS TO SET ASIDE SALE OF CERTAIN REAL ESTATE.

*Right of a judgment-creditor to sell real estate of his debtor while the same is in possession of a receiver, without leave of the court appointing him.*

In 1885 judgments for $30,807.99 and $10,380.83, respectively, against J. Forman Wilkinson were recovered by the Merchants' National Bank, and docketed in the office of the clerk of Onondaga county, upon which executions were issued and returned unsatisfied. Thereafter a creditors' action was brought by the said bank to set aside a certain deed, mortgage and assignment executed by the said J. Forman Wilkinson and one Alfred Wilkinson, which was tried and decided in favor of the plaintiff therein, as were also two other similar actions brought by Loos and others and Bates and others, respectively; the three actions having been brought to trial at the same term of the court and a decision rendered in all three in favor of the plaintiffs.

In the actions, brought by the creditors, Loos and Bates, judgments were entered, on September 18, 1886, appointing receivers, the judgment, entered in the action of Bates and others, providing as follows: "And it is further adjudged and decreed that said receivers sell the said premises and real estate at public auction, according to the usual course and practice of this court, and upon such sale execute a conveyance of the same to the purchaser or purchasers at such sale; that either or any of the parties to this action may purchase at such sale, *but the said conveyance by said Wilkinson and said Hubbell to said receivers, and their acceptance thereof, and any sale and conveyance by said receivers, shall be subject to and shall not effect the judgment liens of the plaintiffs on said premises, as judgment-creditor, upon their judgment, or their right to enforce the same by execution and sale, or by any other proceeding upon the said judgment, according to their rights thereunder.*"

Subsequently, and on September 27, 1886, a judgment was entered in the creditor's action, brought by the bank, adjudging that the said deed, mortgage and assignment were fraudulent and void as to the said bank, and setting them aside, which judgment in the creditor's action recited the two money judgments recovered by the bank, and also contained the following provision: "Which judgments are, and each of them is, a lien upon said real estate from the time the same were docketed in Onondaga county, and that the same be so enforced."

On August 20, 1886, an execution was issued by the bank, upon the judgment for $30,807.99, and thereafter, and on the 29th day of August, 1887, the interest of J. Forman Wilkinson in the real estate so conveyed was sold by the sheriff, who issued certificates to the purchaser in the usual form, which were recorded in the said clerk's office.

Upon an appeal from an order, made upon the petition of Loos and others, setting aside the sales of the interest of J. Forman Wilkinson in the real estate as irregular and void, upon the ground that the said real estate was, at the time of the sales, in the possession of receivers appointed by the court, and that the sales had been made without permission having been obtained from the court to make them.

*Held,* that the order should be reversed. (FOLLETT, J., dissenting.)

*Chautauque County Bank* v. *Risley* (19 N. Y., 369) followed; *Walling* v. *Miller* (108 id. 173), *Noe* v. *Gibson* (7 Paige, 513); *Wiswall* v. *Sampson* (14 How. [U. S.], 52) distinguished.

*Il seems* that, until the question shall be held otherwise by the ultimate court, that the case of the *Chautauque County Bank* v. *Risley* (*supra*) should be regarded as an authority for upholding a sale made upon a valid prior judgment in virtue of an execution issued thereon prior to the appointment of any receiver. (Per HARDIN, P. J.)

APPEAL by the Merchants' National Bank of Syracuse and George N. Kennedy, from an order made upon the application of the receivers and certain judgment creditors of J. Forman and Alfred Wilkinson at a Special Term held in Onondaga county, September 3, 1888, and entered on the 10th day of September, 1888, in the clerk's office of said county, setting aside certain alleged sales, to the said Kennedy upon execution issued in favor of said bank against J. Forman Wilkinson, of the latter's interest in certain real estate, upon the ground that said real estate was at the time in possession of receivers of the court, and said sales were not authorized and were irregular.

The important part of the order is in the following language, viz.: "It is ordered that each and every one of the purported sales of the interest of J. Forman Wilkinson in the real estate mentioned and described in said moving papers be, and the same is hereby vacated, annulled and set aside as irregular and void, upon the ground that said real estate was, at the time of such purported sales, and for a long time prior thereto, in the possession of receivers appointed by this court as set forth in said moving papers and no leave or permission was obtained from the court to make said sales." * * *

The 3d day of January, 1885, the Merchants' National Bank recovered a judgment for $30,807.99 against J. Forman Wilkinson, which was docketed in the clerk's office of Onondaga county; and on the 4th day of February, 1885, the same bank recovered a judgment for $10,380.83, against J. Forman Wilkinson. Executions were issued on those judgments and returned unsatisfied. Thereafter a creditors' action was brought in behalf of said bank to set aside a certain deed and mortgage and assignment referred to in the petition herein. Issue was joined in that action, and it was tried and decided in favor of the plaintiff therein, setting aside the several instruments mentioned. A similar action was brought by Loos and

others after return of execution; and another similar action was brought by Bates and others, and after issues joined therein the three actions were brought to trial at the same term of this court and a decision rendered in all three actions in favor of the plaintiffs that findings were thereafter prepared and settled in all three cases at the same time; subsequently, and on or about the 27th day of September, 1886, judgment was entered in said action brought by said Merchants' National Bank of Syracuse, adjudging that said conveyances were fraudulent and void as to the said bank, and setting the said conveyances aside. On the 20th day of August, 1886, an execution was issued by the Merchants' National Bank upon its judgment of $30,807.99, and the interest of J. Forman Wilkinson in the parcels of real estate described in the petition, were sold on the 29th day of August, 1887, by the sheriff of Onondaga county, who issued certificates to the purchaser in the usual form, which were recorded in the clerk's office of Onondaga county.

The judgment in the creditors' action of Bates and others was entered September 18, 1886. The judgment in the creditors' action of Loos and others was entered September 18, 1886. The judgment in the creditors' action of the Merchants' National Bank was entered September 27, 1886. By virtue of the judgment entered in the Bates action, and in the Loos action, Hubbell and Hiscock were appointed receivers.

In the creditors' action of Bates and others, it was provided as follows: "And it is further adjudged and decreed that said receivers sell the said premises and real estate at public auction, according to the usual course and practice of this court, and upon such sale execute a conveyance of the same to the purchaser or purchasers at such sale; that either or any of the parties to this action may purchase at such sale, but the said conveyance by said Wilkinson and said Hubbell to said receivers and their acceptance thereof, and any sale and conveyance by said receivers shall be subject to and shall not affect the judgment liens of the plaintiffs on said premises, as judgment creditors upon their judgment or their right to enforce the same by execution and sale, or any other proceedings upon the said judgment, according to their rights thereunder."

By the judgment in favor of the Merchants' Bank in the creditors'

action, no receiver was appointed, but the judgment for $30,807.99, and the judgment for $10,380.83, were recited, and following that recital was the following provision, viz.: "Which judgments are and each of them is a lien upon said real estate from the time the same were docketed in Onondaga county, and that the same be so enforced.'

In the papers used upon the motion there is some controversy in respect to whether or no the receivers took possession of all the property mentioned in the petition, but as the Special Term found the fact favorably to the petitioners, it was not deemed necessary at the General Term to consider that question in detail by any further reference to the conflict in the affidavits upon that subject. The Merchants' National Bank and the purchaser at the sales made on the 29th of August, 1887, have appealed from the order.

*W. G. Tracy*, for the appellants.

*Frank H. Hiscock*, for the respondents.

HARDIN, P. J.:

The appellant insists that the provisions in the judgment in the creditors' action in behalf of the Merchants' National Bank, were equivalent to a permission to the creditor to enforce its judgments by execution; and (2) that the court below erred in "refusing to grant an order *nunc pro tunc* allowing the sale, and this court should now grant such order;" and (3) "no leave of the court was necessary before the judgment creditor could sell."

Inasmuch as the Special Term has placed its order "upon the ground that such real estate was, at the time of such purported sales, in possession of the receivers appointed by this court, * * * and no leave or permission was obtained from the court to make such sales," the review of its order may be confined to the grounds named therein.

The opinion of the learned judge at Special Term is rested upon *Walling* v. *Miller* (108 N. Y., 173). That case related exclusively to personal property. It had been levied upon by the sheriff on the 12th of May, 1883, and thereafter, and two days thereafter, a receiver of the property was appointed, and, on the same day, took possession of the property. And it was said, viz.: "The sheriff had no right to interfere with it by virtue of his lien under the

execution in his hands," and in an action by the purchaser at sheriff's sale, " the sale under the execution, without leave of the court, while the property was thus in the custody of the court, was wholly illegal and void." Upon an examination of the opinion delivered in that case, it is found that the cases of *Noe* v. *Gibson* (7 Paige, 513); *Albany City Bank* v. *Schermerhorn* (10 id., 263); *Wiswall* v. *Sampson* (14 How. [U. S.] 52), are cited as authority for the doctrine laid down. The case of *Noe* v. *Gibson* (7 Paige, 513), and *Albany City Bank* v. *Schermerhorn* (10 id., 263), both related to personal property. The case of *Wiswall* v. *Sampson* (14 How. [U. S.], 52) was a case originating in Alabama, and the property was sold under a judgment of one court while in the possession of a receiver appointed under a judgment of another court.

If the principle laid down by the Court of Appeals in *Walling* v. *Miller* (108 N. Y., 173) is applicable to real estate and judgment liens upon it, then the learned judge at Special Term was warranted in following the doctrine of that case. But, we think, the question involved on this appeal was more directly involved in the case of *Chautauque County Bank* v. *Risley* (19 N. Y., 369). After reference to the early case of *Angel* v. *Smith* (9 Vesey, 335), in respect to the effect of sale, without leave of the court, after a receiver is appointed, it was said in the opinion by COMSTOCK, J., viz.: "Now, in this practice of the Court of Chancery, I see nothing even to suggest a doubt of the validity of a title acquired by sale under a judgment, which is a legal lien upon the land sold, prior and paramount to the title or possession of a receiver. It may be that the creditor should ask leave of the Court of Chancery before he proceeds to sell, or that the purchaser acquiring the title should make a like application before he brings his ejectment. If, however, he fails to do so, the question is merely whether the court will consider him in contempt and punish him accordingly. *The sale itself is but the assertion of a legal right, and it cannot be illegal and void on the ground that the leave of an equitable tribunal is not first asked and obtained.* It may be that the case of *Wiswall* v. *Sampson*, in the Supreme Court of the United States (14 How. [U. S.], 52), goes to the extent of laying down a different doctrine. If so, we are constrained to say that we cannot follow this decision. The result is that White, by the decree in the chancery suit annulling the debtor's

fraudulent assignment, and by the receiver's sale and conveyance, acquired title to the premises in question, subject to the liens of judgments docketed prior to the commencement of that suit in favor of persons not parties thereto. On one of those judgments the sheriff sold, *and the plaintiff's have the conveyance under that sale.* They are, therefore, entitled to recover the premises, so far as we have yet examined the case."

The verdict which had been ordered for the plaintiff was sustained, and it is very clear, from an examination of the case, that the question referred to in the quotation we have made was directly involved and pointedly resolved in favor of the plaintiff. We are not aware that the case has not been disturbed by any authority expressly referring to the question here involved. Until the question shall be held otherwise by the ultimate court it seems reasonable to regard the case as an authority for upholding a sale made upon a valid prior judgment in virtue of an execution issued thereon prior to the appointment of any receiver. The case was referred to as an authority in *White's Bank of Buffalo and others* v. *Farthing and others* (101 N. Y., 347), in which case ANDREWS, J., said, in respect to a decree setting aside a fraudulent conveyance, viz. : " If it simply sets aside the fraudulent conveyances, the land will remain charged with the liens of the several judgments in the order of their docketing, and the proceedings to enforce them will be regulated by the statute. If it goes further and appoints a receiver, and directs a conveyance to him, a purchaser under the receiver's sale will take title, as of the time of the debtor's conveyance to the receiver, subject, however, to the judgments in favor of the banks other than the plaintiff."

It may be observed that it is quite apparent, from the affidavits used in opposing the motion, that there was no intent to violate the rules of practice in respect to the receiver and his rights and privileges, and it is inferable that the counsel for the Merchants' Bank and the purchaser supposed that the sale on the execution was enforcing the judgment in favor of the bank, not only in accordance with the statute giving a lien and authorizing an execution to enforce a lien of a judgment, but that such sale was virtually authorized by the several decrees entered in the creditors' action. However, the conclusion reached upon this appeal rests for its

support largely upon the authority of the *Chautauque County Bank* v. *Risley* (*supra*).

The order should be reversed, with ten dollars costs and disbursements.

MARTIN, J.:

I am of the opinion that permission to make the sales, which were set aside by the order appealed from, was given by the judgment entered in the creditors' action by the Merchants' Bank of Syracuse against Wilkinson and others. Before the commencement of that action many of their creditors had obtained judgments against J. Forman Wilkinson and Alfred Wilkinson; the bank had also obtained two judgments against J. Forman Wilkinson; the Wilkinsons and their wives had made certain conveyances of real estate to John Wilkinson; John Wilkinson had executed a mortgage on the same and J. Forman Wilkinson and Alfred Wilkinson had made a general assignment for the benefit of creditors to Charles E. Hubbell. Actions in the nature of creditors' bills were commenced by Loos and others and Bates and others, as well as by said bank, to set aside such conveyances, mortgage and assignment as fraudulent. These three actions were all tried at the same time, before the same justice, and resulted in a decision in favor of the plaintiffs in each of said actions, setting aside such conveyances, mortgage and assignment. The findings and decision in all the cases were settled at the same time. One of the conclusions of law in the decision in the Bates case, after providing for the appointment of receivers, the conveyance to them by the debtor and assignee of certain property, and for a sale by such receivers, contained the following : " But said conveyance by said Wilkinson and Hubbell to such receivers, and any sale or conveyance by said receivers, must be expressly subject and without prejudice to, and not affect the judgment lien upon said premises of the plaintiffs and judgment-creditors herein upon their various judgments, or their rights to enforce the same by execution and sale, or any other proceedings upon the said judgments according to their rights thereunder." The judgment in that case contained the same provision. The judgment in the bank case, after setting aside said conveyances, adjudged that said ·

mortgage be also set aside, "to the end that said lands and the proceeds thereof be appropriated to the payment of their debts." It then set aside the general assignment as void, and provided " that the cloud created thereby upon the real estate described in the complaint be, and the same is, hereby removed, to the end that the plaintiff may enfore its lien thereon by virtue of its judgments described in the complaint, * * * which said judgments are and each of them is a lien on said real estate, * * * and that the same be so enforced." It is stated in Judge KENNEDY's affidavit that he was present when the findings in the three cases were settled, and that he understood that the judgment-creditors who brought said actions were granted the right to proceed, if they saw fit, and sell said lands under their judgments without interference by the appointment of said receivers, and without any other leave of the court being granted, and that the judgment was entered in the form employed for the purpose of allowing the bank to sell said lands under its judgment.

It seems to me that the findings of the court and judgment in the Bates case, the judgment in the bank case and the affidavit of Judge KENNEDY, all show that it was the intention of the court, as well as of the parties, that each of such judgment-creditors, especially those who were parties in the Bates and bank cases, should be permitted to pursue his or its legal remedy for the enforcement of their judgments by execution and sale, notwithstanding the fact that such receivers had been or were to be appointed. Such a permission was expressly given in the Bates case, in language so explicit as to leave no doubt or uncertainty as to its purpose and effect. I think the language used in the judgment in the bank case, when construed in the light of the surrounding circumstances, can mean nothing else. The conveyances, mortgage and assignment were set aside, to the end that the plaintiff might enforce its judgments, which were declared to be liens, and that the same be so enforced How enforced? Enforced as judgment liens on real estate are usually enforced, by execution and sale. I think it was the intent and purpose of such provision to give the bank permission to pursue the usual legal method of enforcing such judgments by execution and sale, although such receivers were to be or had been appointed, and that no other permission was necessary. These

considerations lead me to concur in the conclusion of my brother HARDIN, that the order appealed from should be reversed.

FOLLETT, J. (dissenting) :

In *Walling* v. *Miller* (108 N. Y., 173), an execution was legally levied upon chattels, and two days later a receiver of them was appointed, who took possession. Subsequently the chattels were sold by virtue of the execution without leave of the court, in whose custody they were. After this sale, the receiver sold the chattels and his vendee took possession. The plaintiff, who claimed title under the execution sale, brought trover against the purchaser from the receiver, and it was held that : " The sale under the execution without leave of the court, while the property was thus in the custody of the court, was wholly illegal and void."

The reasons given for this judgment apply with equal, if not with greater force, to the sale of real estate upon a prior lien while in the hands of a receiver, without leave of the court. This precise question was decided by the Supreme Court of the United States in *Wiswall* v. *Simpson* (14 How., 52 ; see, also, 3 Wood's R. R., 1656 ; Freem. Judg., § 207 ; Freem. Ex., § 129 ; 2 Redf. R. R. [3 ed.], 364 ; Beach on Receivers, § 713.)

In the *Chautauque County Bank* v. *Risley* (19 N. Y., 369), the house and lot was sold by the sheriff on his execution some days after the receiver had sold and conveyed all of his right and title to the property. The receiver having no interest in the property, and it not being in the custody of the court, there was no reason why a valid sale could not be made without leave of the court ; and the question presented by this appeal was not before the court. The remarks of the learned judge, on page 376 of the report, were upon a question not involved in the case.

The opinion of Mr. Justice WILLIAMS, upon granting the order appealed from, very clearly demonstrates that leave to sell by execution is not contained in the judgment.

The order should be affirmed, with costs.

Order reversed, with ten dollars costs and disbursements.